## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Rodney V. Fritz,**

**Plaintiff,**

**v.**                                          **Case No. 15-9178-JWL**

**United Parcel Service, Inc.,**

**Defendant.**

### MEMORANDUM & ORDER

Plaintiff Rodney V. Fritz filed this suit against his employer United Parcel Service, Inc., asserting that UPS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; and the Americans with Disabilities Act, 42 U.S.C. § 12101, by removing plaintiff from a position he held for more than 10 years after an annual medical examination revealed that plaintiff no longer met UPS's minimum vision requirement for the position.  This matter is presently before the court on UPS's motion for summary judgment on plaintiff's claims (doc. 32).  As will be explained, the motion is granted.

### I.    Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff as the non-moving party.  Defendant United Parcel Service, Inc. ("UPS") is a package delivery company.  Some packages moving through the UPS systems are damaged, contaminated or otherwise hazardous.  Only designated UPS employees are permitted to dispose

of hazardous packages and those employees generally are known as "responders."  Responders are required to read various data sheets and charts and to wear protective equipment including, if only rarely, a respirator.  UPS requires responders to complete a medical questionnaire every two years and, depending on the answers provided in the questionnaire, may require a responder to complete a physical examination.  If a physical examination is conducted, a doctor completes a medical review form and that form, along with the questionnaire, is submitted to one of UPS's occupational health nurses to determine whether the responder is qualified to work as a responder.  One of UPS's requirements for responders is a vision requirement that states as follows:

> Corrected Distant Vision Less than 20/40 combination in both eyes.  Corrective lenses that do not compromise the fit and seal of the respiratory are allowed.  Use of contact lenses is permitted.

This vision requirement was implemented by UPS as part of an overall "Respiratory Protection Program."  The Respiratory Protection Program was itself implemented by UPS in an effort to fulfill its obligations under a corporate settlement agreement that UPS reached with the Occupational Safety and Health Administration (OSHA) in 1992.  That agreement defined UPS's responsibilities in dealing with emergency response to damaged packages with might present hazardous conditions to employees and required UPS to adopt procedures and training plans for the safe response to damaged packages.  The vision requirement adopted by UPS was not specifically required by the settlement agreement.

Plaintiff has worked for UPS at its Lenexa, Kansas facility for many years and he began performing responder duties in 2003.  On each medical questionnaire completed by plaintiff (he completed questionnaires in 2003, 2005, 2007, 2009, 2011 and 2013), plaintiff indicated that he

wore glasses or contacts but denied any other vision problems.  In 2013, UPS required plaintiff to complete a physical examination in light of certain responses he provided concerning high blood pressure.   In December 2013, Dr. Ryan Jones conducted that examination.   The examination revealed that plaintiff's vision in both eyes was 20/70 with correction. Nonetheless, Dr. Jones told plaintiff that his vision was "okay to do this job" and indicated on the form that plaintiff passed the physical and was cleared for full respirator use.  Dr. Jones avers that, at the time he signed the medical review form, he did not have a copy of UPS's vision requirements for responders and was not aware of those requirements.   Other than a conclusory assertion that Dr. Jones is "beholden" to UPS and "changed his medical opinion" based on his relationship with UPS, plaintiff does not dispute that Dr. Jones was not aware of the vision requirement at the time he signed plaintiff's medical review form.

Plaintiff's questionnaire and medical review form were then submitted to Gayle Narimatsu, who works for UPS in California as an occupational health nurse.  On January 2, 2014, Ms. Narimatsu reviewed plaintiff's medical packet and observed that he tested 20/70 with correction in both eyes.  Ms. Narimatsu determined that plaintiff was not medically qualified in light of the vision requirement and she noted that fact on the form.  That same day, Ms. Narimatsu sent an email to her supervisor stating that plaintiff had not passed the physical "due to vision."  The email further indicated that plaintiff "should make sure his glasses are up to date, and then redo the vision.  He must be at Corrected Distant Vision less than 20/40 combination in both eyes."  At the time she sent her email, Ms. Narimatsu had no knowledge of plaintiff's race or any specific visual impairment suffered by plaintiff.

On January 3, 2014, Ms. Narimatsu's supervisor forwarded the email to Rebecca Aciego, who worked at the Lenexa facility as a Safety, Training and Retention Manager for UPS.   That same day, Ms. Aciego, in turn, forwarded the email to plaintiff's immediate supervisors and Mitch Churchman, the Labor Manager at the facility.   In her email, Ms. Aciego stated:

> Rodney did not pass the vision test.  He is not medically qualified.  He must be at [*sic*] Corrected Distant Vision less than 20/40 combination in both eyes and will have to redo the vision test.

Thereafter, plaintiff's supervisors notified plaintiff that he was disqualified from performing his responder duties.   Although UPS urged plaintiff on multiple occasions to update his glasses prescription, plaintiff believed that his vision could not be improved and that he had already passed the physical with Dr. Jones.   Plaintiff continued to perform all other duties associated with his position.   His pay and benefits remained the same and he received all pay increases that he would have received otherwise.

On January 8, 2014, plaintiff filed a grievance alleging that he was removed from his responder duties on the basis of his age, race and disability in violation of Article 36 of the collective bargaining agreement.   In March 2014, a local grievance hearing was held.   At that hearing, plaintiff was represented by union business agent James Willis and UPS was represented by labor manager Mitch Churchman.   At that hearing, Mr. Churchman and Mr. Willis agreed that it "wouldn't be fair" to remove plaintiff from his responding duties when another individual, Brandon Wilson, was performing those duties despite the fact that he was blind in one eye.  Mr. Wilson is younger than plaintiff and is Caucasian, but there is no evidence that Mr. Churchman ever considered those facts as a basis for his belief that it would not be fair

4

to require plaintiff to update his prescription.  The grievance was settled and Mr. Churchman intended to permit plaintiff to return to his responder duties.  Toward that end, on Saturday, April 12, 2014, Jeremy Melton, UPS's night sort manager at the Lenexa facility, sent Ms. Aciego an email to confirm that plaintiff could return to his responder duties:

> I just wanted to follow up and make sure that Rodney is good to respond.  After the last hearing Mitch and James agreed that since Brandon Wilson is blind in one eye that Rodney shouldn't have to get his glasses adjusted since it is only one eye.

On Monday morning, April 14, 2014, Ms. Aciego responded to Mr. Melton and copied Mr. Churchman as follows:

> Rodney Fritz does not have a valid physical on file.  Per our Corporate Settlement Agreement with OSHA, no person shall respond without a valid respiratory physical.  Rodney did not pass in January and has not been back to re-test.  He cannot respond.  Any violation such as this is in direct violation of our CSA and we are subject to fines by OSHA.  We are also putting the employee's safety at risk if they are not medically cleared and putting ourselves in a liable situation.  If anyone has questions regarding our CSA please feel free to give me a call.  These items are not determined at local hearings.

Viewing the evidence in the light most favorable to plaintiff, the corporate settlement agreement did not specifically require respiratory physicals and Ms. Aciego was not all that familiar with the specific requirements of the settlement agreement and had no basis for her assertion that UPS could be fined by OSHA if plaintiff was returned to his responder duties.

Upon receipt of Ms. Aciego's email, the grievance process was re-opened and a second local hearing was held with James Willis, Mitch Churchman and plaintiff present.  At that hearing, Mr. Churchman again urged plaintiff to update his prescription.  Ultimately, the hearing was deadlocked and, consistent with UPS's grievance procedure, plaintiff's grievance was escalated to a regional committee known as the Missouri-Kansas (Mo-Kan) panel.  The Mo-Kan

5

panel consists of an equal number of representatives from the union and UPS.  On October 23, 2014, the Mo-Kan panel held a hearing on plaintiff's grievance.  Mr. Willis argued to the panel that UPS had violated the parties' contract by refusing to honor the prior settlement of plaintiff's grievance but he also addressed the substance of the grievance.  Mr. Churchman argued on the behalf of UPS.  That same day, the panel found that "based on the facts presented, this committee finds no contract violation."

After the panel's decision, Mr. Churchman confirmed with Ms. Aciego that plaintiff would be permitted to return to his responder duties if he updated his glasses prescription and passed the vision test.  Ms. Aciego confirmed that plaintiff would be recertified as a responder if and when he corrected his vision and passed a vision test.  Since that time, plaintiff has received an updated prescription and his vision has tested 20/40 with both eyes uncovered.  He did not inform UPS that his prescription had changed and he has not had his vision re-tested through UPS.  He remains employed by UPS but has not returned to his responding duties.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III.    Race and Age Discrimination

In the pretrial order, plaintiff contends that defendant removed him from the responder position on the basis of his race and/or age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.[1]  As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id*.  To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  If he establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*.  If defendant meets this burden, summary judgment against plaintiff is

---

[1] All these claims are assessed under the same *McDonnell Douglas* order of proof.  *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1166 (10th Cir. 1998).

warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

In its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of discrimination because he was not qualified for the position (an element sometimes utilized as part of the prima facie case) and he did not suffer an adverse employment action. As evidence of plaintiff's lack of qualification, defendant relies on its asserted reason for removing plaintiff from his responder duties—his failure to meet the vision requirement. Defendant, then, urges the court to consider its proffered nondiscriminatory reason for the employment decision in connection with analyzing plaintiff's prima facie case. Stated another way, defendant suggests that plaintiff must disprove defendant's proffered reason for the employment decision in order to establish his prima facie case. This argument constitutes an impermissible "end run" around the *McDonnell Douglas* analysis and the court cannot consider it at the prima facie stage. See, e.g., *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis and frustrate plaintiff's ability to establish pretext).

Defendant also contends that plaintiff has not suffered an adverse employment action despite the fact that he was removed from his responder duties. Plaintiff concedes that he has suffered no loss in pay, benefits or seniority. He has received all pay increases and he has remained at all times in the same Article 22 Combo position but is not permitted to perform responder duties associated with that position. Plaintiff contends, however, that his overtime

opportunities were reduced when he was removed from his responder duties. Defendant does not dispute that a reduction in overtime opportunities can constitute an adverse employment action. *See Reinhardt v. Albuquerque Pub. Schools Board of Ed.*, 595 F.3d 1126, 1133 (10th Cir. 2010). According to defendant, if plaintiff experienced a reduction in overtime hours, that reduction was due exclusively to plaintiff's choice as opposed to any action on the part of UPS. Defendant asserts that overtime is assigned based on seniority such that plaintiff was eligible to work overtime based solely on his seniority without regard to whether he was working responder duties—he simply elected not to take advantage of those opportunities. Although plaintiff's evidence on this issue is perilously thin, the court concludes that he has come forward with sufficient evidence to survive summary judgment. It is clear that he worked less overtime hours after he was removed from the responder position and, while overtime is based on seniority, Mr. Willis testified that those opportunities vary depending on availability of overtime "where" the employee is working. While the record is not clear as to whether additional overtime opportunities were available in connection with responder duties that plaintiff was precluded from working in light of the vision requirement, a jury could infer that plaintiff's medical disqualification precluded him from overtime opportunities that were available in connection with performing responder duties.

Defendant also moves for summary judgment on the grounds that plaintiff has failed to establish pretext—that is, that he has failed to come forward with evidence sufficient to cast doubt on defendant's proffered reason for removing plaintiff from his responder duties. The court, then, analyzes whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for the employment decision. "This burden is one of production, not

persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here.  *See id*.  According to defendant, it removed plaintiff from his responder duties because plaintiff failed to meet the vision requirement necessary to perform those duties.  The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." Carter, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000)).  A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently.  *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011).  In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

In an effort to establish pretext, plaintiff first contends that UPS itself determined that removing plaintiff from his responder duties was discriminatory.  Plaintiff contends that both

10

Mr. Churchman and Mr. Melton found that it would be "discriminatory" to require plaintiff to update his vision prescription when Mr. Wilson (who is younger and Caucasian) was permitted to continue working despite his vision impairment.  The uncontroverted evidence does not support any inference that UPS determined that removing plaintiff from his duties was "discriminatory."   At most, the evidence viewed in the light most favorable to plaintiff demonstrates that Mr. Churchman settled plaintiff's grievance because he believed it was unfair to remove plaintiff from the responder duties and to require plaintiff to update his vision prescription when Brandon Wilson was performing responder duties with vision in only one eye.  There is no evidence remotely suggesting that Mr. Churchman believed that UPS had removed plaintiff from his responder duties based on plaintiff's race or age.  Similarly, there is no evidence that Mr. Churchman had any understanding of how UPS's vision requirement applied to plaintiff as opposed to Mr. Wilson.  In such circumstances, Mr. Churchman's decision to settle the grievance—a decision that was quickly overturned by UPS—does not call into question UPS's reason for removing plaintiff from his responder duties.

Plaintiff also highlights UPS's preferential treatment of Brandon Wilson as evidence of pretext.  As explained earlier, Ms. Narimatsu is the individual who disqualified plaintiff from the responder duties and who determined that Mr. Wilson was qualified to perform those duties.  Mr. Wilson is blind in one eye and has 20/40 vision in the other eye.  Using both eyes, then, Mr. Wilson's vision satisfied UPS's vision requirement.  Although plaintiff has vision in both eyes, his vision using both eyes was 20/70 and, thus, failed to satisfy UPS's vision requirement.  As explained by Ms. Narimatsu, UPS's vision requirement does not require 20/40 vision in each eye individually.  It requires only that the employee have 20/40 "combination" vision using both

eyes simultaneously.[2]   There is no evidence that Ms. Narimatsu applied UPS's vision requirement differently to Mr. Wilson than she did to plaintiff.  In fact, in both cases she essentially overruled the respective doctors' qualification decisions by applying that policy consistently and uniformly.  There is also no evidence that Ms. Narimatsu ever applied the requirement inconsistently to or among other employees or that the requirement was ever waived for any employee.  Finally, there is no evidence that Ms. Narimatsu, at the time she determined that plaintiff was not qualified for the responder position in light of his vision, had any knowledge of plaintiff's race or any specific awareness of his age.[3]   Thus, no reasonable jury could there is no evidence from which a jury could conclude that Ms. Narimatsu disqualified plaintiff from his responder duties for some reason other than his failure to meet the vision requirement.

Finally, plaintiff contends that he has raised sufficient evidence of pretext because the vision requirement, contrary to Ms. Aciego's statements to management, is not required by OSHA or in any settlement agreement but is simply a less stringent, modified version of a DOT

---

[2] Plaintiff suggests that Ms. Narimatsu deviated from the written vision guideline with respect to Mr. Wilson by leniently interpreting the policy as permitting 20/40 vision in both eyes "uncovered" when the policy itself does not use the word "uncovered." According to plaintiff, the written guideline suggests that the 20/40 vision requirement must be satisfied in both eyes individually (*i.e.,* with one eye covered).    But even assuming that Ms. Narimatsu interpreted the policy more leniently than intended by permitting employees to test with both eyes uncovered, there is no evidence that she applied that policy in that way only with respect to Mr. Wilson as opposed to across the board.  Thus, no inference of pretext is permitted. *See Lewis v. Oklahoma ex rel. Board of Regents for Tulsa Community College,* 42 Fed. Appx. 160, 168-69 (10th Cir. 2002) (deviation from written policy fails to establish pretext if deviation is consistently applied to all applicants).

[3] While plaintiff's date of birth appears at the top of the medical form reviewed by Ms. Narimatsu, and his age appears on the medical questionnaire, Ms. Narimatsu testified that she does not make an attempt to identify an employee's age because she does not need that information for purposes of her review.

vision requirement.  Plaintiff, however, fails to articulate how the allegedly untrue statements of a non-decisionmaker such as Ms. Aciego could prove that Ms. Narimatsu made the decision to disqualify plaintiff based on his race or age.  *See Hysten v. Burlington Northern Santa Fe Ry. Co.*, 415 Fed. Appx. 897, 911-12 (10th Cir. 2011) (statements by non-decisionmakers generally cannot be used to establish that a decision was tainted by discriminatory animus).  Because plaintiff has provided no link between Ms. Aciego's statements and the decision to disqualify plaintiff, he has failed to raise a triable issue of pretext stemming from Ms. Aciego's statements. Plaintiff further argues that the vision requirement has no bearing on plaintiff's ability to safely perform responder duties and is unnecessary for the position.  This argument fails to establish pretext in the absence of any evidence that UPS created the vision requirement for the purpose of excluding members of a protected class or any evidence that the vision requirement was applied inconsistently or in bad faith.  And there simply is no such evidence in the record before the court.  *Ramseur v. Perez*, 80 F. Supp. 3d 58, 69-70 (D.D.C. 2015) (plaintiff's belief that job requirement used to disqualify her was unrelated to position did not establish pretext where there was no evidence that management fabricated the need for the requirement to cover up discriminatory animus); *Komel v. Jewel Companies*, 874 F.2d 472, 474-75 (7th Cir. 1989) (plaintiff's testimony that degree requirement was unnecessary to new position did not establish pretext).

For the foregoing reasons, plaintiff has failed to come forward with evidence of pretext sufficient for a jury to conclude that UPS's stated reason for disqualifying plaintiff from his responder duties is unworthy of belief.  The court's conclusion in this regard is further buttressed by the fact that the Mo-Kan panel independently reviewed plaintiff's grievance

13

challenging the decision as discriminatory and expressly denied that grievance. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014) (summary judgment appropriate where regional grievance panel acted in accordance with the company's written policies in independently assessing plaintiff's alleged misconduct and plaintiff did not allege the panel was itself biased, had retaliatory motive, or merely rubber-stamped the termination decision). Summary judgment is granted on plaintiff's claims of race and age discrimination.

## IV.    Disability Discrimination

In the pretrial order, plaintiff asserts a claim for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553.  According to plaintiff, defendant removed him from the responder position on the basis of his vision impairment and, more specifically, a condition called nystagmus.  Defendant does not dispute that it disqualified plaintiff based on his vision impairment and, thus, the *McDonnell Douglas* (which both parties utilize) may be unnecessary.  *See Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (suggesting that *McDonnell Douglas* analysis inapplicable when ADA plaintiff is terminated based on failure to receive medical qualification in light of health conditions).[4]  Regardless, plaintiff must establish in the first instance that he is disabled

---

[4] The record reflects that nystagmus and vision acuity are two separate concepts.  Thus, when defendant admits that it disqualified plaintiff based on his vision impairment, it is not necessarily admitting that it disqualified plaintiff based on his nystagmus (and, in fact, there is no evidence that Ms. Narimatsu had any knowledge of plaintiff's nystagmus).  Nonetheless, because nystagmus affects vision acuity, the concepts may be sufficiently intertwined to suggest

within the meaning of the ADA. *See* 42 U.S.C. §§ 12112(a) & 12111(8); *Davidson v. America Online, Inc*., 337 F.3d 1179, 1189 (10th Cir. 2003) (if employer readily admits that alleged disability played a prominent part in the decision, plaintiff must still establish that he or she is in fact statutorily disabled).

Congress has provided three statutory definitions for "disability" under the ADA:  A plaintiff may show either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting 42 U.S.C. § 12102(1)).  In the pretrial order, plaintiff contends only that defendant discriminated against him on the basis of an actual disability under subsection (A).  In his response to the motion for summary judgment, however, he appears to suggest that defendant, based on unfounded stereotypes and assumptions, "regarded" him as disabled. *See Jones v. UPS, Inc*., 502 F.3d 1176, 1190 (10th Cir. 2007) ("regarded as" definition of disability was designed to redress stereotypes associated with disability).  To the extent that plaintiff purports at this juncture to assert a "regarded as" claim, that claim has been waived because it was not preserved in the pretrial order. *See Genesis Health Clubs, Inc. v. LED Solar & Light Co*., 639 Fed. Appx. 550, 555 (10th Cir. 2016).

And even if that claim has not been waived, plaintiff has come forward with no evidence (and, significantly, no argument) that defendant regarded him as disabled.  To demonstrate that UPS regarded plaintiff as disabled, plaintiff must show that UPS believed either that plaintiff

---

that defendant made its employment decision based on the specific impairment that plaintiff alleges is a disability.

has a substantially limiting impairment that he does not have or that plaintiff has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Dillon v. Mountain Coal Co.*, 569 F.3d 1215, 1218 (10th Cir. 2009).  Plaintiff does not articulate any theory concerning whether and to what extent defendant believed that plaintiff's impairment substantially limited a major life activity.  Plaintiff asserts only that, by removing plaintiff from the responder position based on his diminished vision, defendant treated plaintiff as disabled.  Presumably, then, plaintiff suggests that defendant regarded plaintiff's vision impairment as substantially limiting his ability to work.

To prevail on a claim that defendant regarded him as substantially limited in the major life activity of working, plaintiff must demonstrate that defendant regarded him as significantly restricted in performing either (1) a class of jobs; or (2) a broad range of jobs in various classes. *See Dillon v. Mountain Coal Co.*, 569 F.3d 1215, 1218 (10th Cir. 2009) (citing *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1163 (10th Cir. 2006) (holding that "there must be sufficient evidence that the employer subjectively believed the employee to be significantly restricted as to a class of jobs or broad range of jobs in various classes."))  The EEOC'ss regulations define a "class of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Id*. (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).  A "broad range of jobs" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or

16

abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Id*. at 1218–19 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

The court, then, evaluates plaintiff's purported "regarded as" claim under the ADA by using a two-step inquiry. *Id*. at 1219. First, the court determines whether defendant regarded plaintiff as significantly restricted in performing the responder position because of his impairment. *See id.* (citing *Heartway*, 466 F.3d at 1165). Next, the court determines whether defendant subjectively believed that plaintiff was significantly restricted in performing either a class of jobs or a broad range of jobs in various classes. *See id*. (citing *Heartway*, 466 F.3d at 1163). Because this type of claim rests heavily on the employer's subjective state of mind, it is "extraordinarily difficult" to prove:

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult.

*Id*. (quoting *Heartway*, 466 F.3d at 1162). Viewing the evidence in the light most favorable to plaintiff, defendant clearly regarded him as significantly restricted in his ability to perform the responder duties of his position. But there is no evidence in the record from which a jury could reasonably conclude that defendant believed that plaintiff's vision significant restricted him for performing any other job—either at UPS or elsewhere. At most, the evidence suggests that defendant regarded plaintiff as unable to perform the responder position. This claim, then,

would fail on the merits even if it had been preserved in the pretrial order. *See Sutton v. United Air Lines, Inc*., 527 U.S. 471, 493 (1999) (dismissal of "regarded as" claim appropriate where plaintiffs alleged only that employer regarded vision impairment as precluding them from holding positions as global airline pilots; because that position is a single job, the allegation does not support the claim that the employer regarded plaintiffs as having a substantially limiting impairment); *Heartway*, 466 F.3d at 1162 (the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working), *superseded on other grounds by statute*, ADA Amendment Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).[5]

The court turns, then, to address plaintiff's claim that he suffers from an actual disability within the meaning of the ADA.  To demonstrate an actual disability under subsection (A), plaintiff must have a recognized impairment, must identify one or more appropriate major life activities, and show that the impairment substantially limits one or more of those activities. *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014).  Plaintiff identifies his impairment as a condition of the eye called "nystagmus" and he contends that his nystagmus limits his ability to see, read, write, type, cook and clean.  Defendant moves for summary judgment on the grounds that plaintiff has not shown that his nystagmus substantially limits any of these major life activities.  As will be explained, the court agrees that summary judgment is appropriate on this basis.

---

[5] Even under the more favorable definition of disability as clarified by the ADA Amendments Act of 2008 and applied in the new regulations promulgated under those amendments, plaintiff must show a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes.  *Allen v. SouthCrest Hosp*., 455 Fed. Appx. 827, 834-35 (10th Cir. 2011).

To show that his nystagmus substantially limits one or more major life activity, plaintiff must show that he is substantially limited in his ability to perform the major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).  This analysis requires an "individual assessment," *id.* § 1630.2(j)(1)(iv), and may take into consideration facts such as the difficulty, effort or time required to perform the major life activity; pain experienced when performing a major life activity; and/or the way the impairment affects the operation of a major bodily function.  *Id.* § 1630.2(j)(4)(ii).  For a visually impaired plaintiff, evidence of a substantial impairment might include evidence of loss of depth perception, degree of visual acuity, evidence of the extent of compensating adjustments in visual techniques or the ultimate scope of restrictions on visual abilities.  *See Sanchez v. Vilsack*, 695 F.3d 1174, 1179 (10th Cir. 2012) (citations omitted).   A medical diagnosis is insufficient; rather, the ADA requires plaintiffs to offer evidence that "the extent of the limitation caused by their impairment in terms of their own experience is substantial."  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

In support of his contention that his nystagmus substantially limits his ability to see, read, write and perform other tasks, plaintiff has marshalled the following evidence:

> Plaintiff testified that he has nystagmus, which causes involuntary movements of his eyes and that "it takes a little longer" to read, write, type, cook, clean and count money.  He testified that he has had the condition since birth and that it is permanent.  He testified that his condition "clearly qualifies as a disability."

> James Willis, the Union's business agent, testified that he believed, at all pertinent times, that plaintiff's vision impairment was "a disability."

> Jill Smith, plaintiff's optometrist, testified that plaintiff's nystagmus would require him to "have a little extra time when taking exams" in school because of the "extra time" needed to read.  She testified that plaintiff's condition "would have an

impact" on any activity that involves reading and that those activities would require "a little bit of extra effort" compared to someone that did not have nystagmus.  She further testified that nystagmus typically impairs an individual's visual acuity.

Ms. Spoerre, plaintiff's supervisor, testified that it was readily apparent that plaintiff's vision was impaired because he had to hold whatever he was reading very close to his eyes.

Taken together, this evidence fails to establish that plaintiff suffers from a disability within the meaning of the ADA.  To begin, the testimony from Mr. Willis and Ms. Spoerre does not remotely suggest that plaintiff is disabled for purposes of the ADA.  Mr. Willis's testimony is entirely conclusory and Ms. Spoerre's testimony is similarly unhelpful.  *See Sperry v. Maes*, 592 Fed. Appx. 688, 697 (10th Cir. 2014) (affidavit from family friend stating that plaintiff's "disability is evident to the average person," that plaintiff was "mentally challenged" and that plaintiff had trouble reading and adding simple numbers was not sufficient to establish that plaintiff was disabled under ADA).

Plaintiff's testimony and Dr. Smith's testimony are substantively the same—plaintiff's condition impacts his ability to perform certain life activities (anything that involves reading) in that those activities require more time and effort to accomplish.  But neither plaintiff nor Dr. Smith provides any analysis that speaks to the affect that plaintiff's nystagmus has on his ability to see or read as compared to most people in the general population. *Compare Sanchez v. Vilsack*, 695 F.3d 1174, 1179-80 (10th Cir. 2012) (plaintiff who had only 50 percent of the total visual field in each eye presented evidence of substantial limitation where medical experts testified that plaintiff's loss of vision was difficult to accommodate and plaintiff testified as to her inability to see whole objects and her tendency to injure herself in light of sight limitations)

*with Szmaj v. American Tel. & Tel. Co*., 291 F.3d 955 (7th Cir. 2002) (plaintiff with congenital nystagmus was not disabled despite evidence that it was "difficult" for him to focus eyes, any amount of reading caused discomfort, and he could not hold a job that required him to spend more than 50 percent of  his time reading a computer screen; "discomfort and disability are not synonyms").

The mere fact that plaintiff's condition "impacts" his ability to see and read does not mean that plaintiff has a "substantial limitation" with respect to those activities.  *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 556-57 (1999) (plaintiff with monocular vision was not disabled under ADA; condition did not substantially limit ability to see where record did not specify extent of plaintiff's visual restrictions or degree of impairment); *Allen v. SouthCrest Hosp*., 455 Fed. Appx. 827, 832–33 (10th Cir. 2011) (it was the plaintiff's "burden to make more than a conclusory showing that she was substantially limited in the major life activity of caring for herself as compared to the average person in the general population"); *Rhodes v. Langston Univ*., 462 Fed. Appx. 773, 779 (10th Cir. 2011) (finding that plaintiff's partial left leg amputation and use of a prostheses was not substantially limiting, even though plaintiff argued that he had some difficulty walking and caring for himself, as he "did not present any evidence to determine the impact of his amputation and how his ability to walk using the prosthesis compares with the walking ability of the general population").  And plaintiff's impairment is not so obvious from the facts that the court may assume it substantially limits a major life activity. *See Sperry v. Maes*, 592 Fed. Appx. 688, 697 (10th Cir. 2014).

Finally, the court notes that plaintiff, in his EEOC questionnaire, identified his disability as nystagmus but responded "no" when asked "Does this disability prevent or limit you from

doing anything?"  This admission further cuts against plaintiff's assertion that he is disabled within the meaning of the ADA.  *See McBride v. Amer Technology, Inc.*, 2013 WL 2541595, at *5 (W.D. Tex. June 10, 2013) (no genuine issue of fact existed as to whether plaintiff was disabled in part because plaintiff indicated on EEOC questionnaire that his disability did not limit him in any respect).

Because plaintiff has not come forward with sufficient evidence demonstrating that his nystagmus substantially limited any of his major life activities, summary judgment is granted on plaintiff's claim that defendant discriminated against him on the basis of a disability.


## V.  Failure to Accommodate Plaintiff's Disability

Plaintiff contends in the pretrial order that defendant failed to accommodate his disability and failed to engage in the interactive process contemplated by the regulations implementing the ADA.  *See EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1049 (10th Cir. 2011) ("To facilitate the reasonable accommodation, the federal regulations implementing the ADA envision an interactive process that requires participation by both parties."); 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").  According to plaintiff, defendant failed to respond to plaintiff's repeated requests to be returned to the responder positions.  Plaintiff's requested accommodation, then, was a return to his position.

Defendant contends that summary judgment is appropriate on this claim because plaintiff failed to exhaust his administrative remedies with respect to the claim.  The court agrees.  Facts

supporting a failure-to-accommodate claim or defendant's failure to meet its obligations to engage in an interactive process do not appear in the text of plaintiff's EEOC charge.  Moreover, on plaintiff's EEOC questionnaire, plaintiff checked "no" in response to the question asking whether he has asked his employer for any changes or assistance with respect to his job in light of his disability.   Under these circumstances, the court agrees that the claim has not been exhausted and that summary judgment is required.  *Jones v. UPS, Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007) (rejecting district court's conclusion that plaintiff had exhausted failure-to-accommodation claim; plaintiff checked "no" in response to question on EEOC questionnaire as to whether he had advised employer about need for accommodation and text of charge revealed no facts that would prompt investigation of failure-to-accommodation claim); *Lara v. Unified Sch. Dist. No. 501*, 350 Fed. Appx. 280, 285 (10th Cir. Oct. 22, 2009) (charge alleging disability discrimination does not exhaust administrative remedies for failure-to accommodate claim).[6]

Independent of the exhaustion issue, defendant also moves for summary judgment on this claim on the grounds that, regardless of defendant's purported refusal to engage in the interactive process, the only "accommodation" requested by plaintiff—a return to his position—is not a reasonable accommodation at all.  *See Hennagir v. Utah Department of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009) (even if an employer fails to fulfill its interactive obligations to help secure a reasonable accommodation, the plaintiff is not entitled to recovery unless he can also show that a reasonable accommodation was possible); *accord Lowe v. Independent Sch.*

---

[6] Plaintiff urges that any failure to exhaust should be excused because he was not represented by counsel at the time he filed his charge.  Because plaintiff was unassisted by counsel when filing his charge, he is entitled to have that charge construed liberally.  See Romero v. Union Pacific R.R., 615 F.2d 1303, 1311 (10th Cir.1980).  That liberal construction, however, does not obviate the need to allege facts from which the court might infer a claim of failure-to accommodate.

*Dist. No. 1*, 363 Fed.Appx. 548, 552 (10th Cir. 2010) (interactive process is not an independent substantive requirement under the ADA but merely a means to achieve a reasonable accommodation; to establish claim, plaintiff must show that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the plaintiff). Plaintiff insisted in his deposition that he did not need an accommodation to perform his job. Plaintiff submits in his response that the only accommodation he sought was a return to his position without regard for the vision requirement and without requiring plaintiff to retake the vision portion of his annual exam. As a matter of law, this "accommodation" is not a reasonable one and any claim based on a failure to accommodate plaintiff's purported disability must fail. *See Hannagir*, 587 F.3d at 1264-65 (suggested "accommodation" of simply allowing employee to remain in position was not reasonable). Summary judgment, then, is appropriate on this basis as well.[7]

## VI.    Retaliation and Interference Claims

In the pretrial order, plaintiff asserts a retaliation claim against defendant under Title VII, the ADEA and the ADA as well as a claim for interference and coercion under the ADA. As a threshold matter, plaintiff asserts that he has come forward with direct evidence of retaliation. Specifically, plaintiff points to the following evidence as "direct" evidence of retaliation:

---

[7] Of course, summary judgment is also appropriate on this claim because plaintiff has not established that he is disabled for purposes of the ADA. *See Felkins v. City of Lakewood*, 774 F.3d 647, 649 (10th Cir. 2014) (declining to address failure to accommodate issue where plaintiff failed to present sufficient evidence of disability); *Sanchez v. Vilsack*, 695 F.3d 1174, 1177-78 & n.2 (10th Cir. 2012) (to prevail on a failure-to-accommodate claim, plaintiff must demonstrate that he or she is disabled).

> When plaintiff told his supervisor that he was going to file a grievance and sue the company, his supervisor asked him "Why are you being so difficult?"; and
>
> Mr. Churchman, in a January 2014 email, indicated that he had offered to let plaintiff stay in his position without responding duties, but that "if he wants to file and have the union fight for him I could DQ him and he could be totally out of job."

None of this evidence constitutes direct evidence of retaliation because the statements were not made during the decisional process and do not reflect that any employment decision affecting plaintiff were based on any protected activity that plaintiff engaged in. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (statements constitute direct evidence only if the speaker has decision-making authority and the statement undisputedly shows that the speaker acted on his or her discriminatory beliefs in the context of an employment decision); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136–37 (10th Cir. 2000) (evidence is not direct evidence if it requires a trier of fact to infer discrimination). There is no evidence that plaintiff's supervisor made any decision pertinent to this lawsuit that affected plaintiff's employment. And although Mr. Churchman appears to contemplate disqualifying plaintiff from his position entirely in response to plaintiff's decision to file a grievance, there is no evidence that he did so. In fact, it is undisputed that plaintiff remained in his position but did not perform responding duties. Mr. Churchman, then, simply never took the action referenced in his email and there is no evidence that he made any decision in this case that was unfavorable to plaintiff in any way.

In the absence of direct evidence of retaliation, the court assesses plaintiff's retaliation and inference claims under the *McDonnell Douglas* framework. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (Title VII and ADEA retaliation claims); *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1264 (10th Cir. 2001) (ADA retaliation and

interference claims).[8]  To state a prima facie case for retaliation, plaintiff "must show (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Daniels*, 701 F.3d at 638 (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008)).  If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for its employment action.  *Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013).  Plaintiff, then, must show that defendant's stated reason is pretextual.  *Id.*

In its motion for summary judgment, defendant contends that summary judgment is required on plaintiff's retaliation and interference claims because plaintiff cannot establish a prima facie case of retaliation and, in any event, cannot establish that defendant's asserted nonretaliatory reason for removing plaintiff from the responder position is pretextual.  To begin, it is clear that plaintiff cannot assert a retaliation claim based on his removal from the responder position because that decision was made before he engaged in any protected activity such as filing a grievance or filing an EEOC charge.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233-34 (10th Cir. 2000) (employer's decision to discharge truck driver not retaliatory because employer's decision pre-dated truck driver's filing of a union grievance).[9]  Recognizing

---

[8] In his response, plaintiff contends that defendant did not move for summary judgment on the ADA interference claim such that a trial is required on this claim.  That argument is simply not supported by the record and defendant clearly and expressly moved for summary judgment on this claim in conjunction with plaintiff's other retaliation claims.

[9] Plaintiff contends that he engaged in additional protected activity such as seeking to return to his responder position and exploring other positions with overtime opportunities similar to the

as much, plaintiff contends in his response that he is challenging certain actions that occurred after the filing of his grievance—UPS's failure to investigate his discrimination complaints; UPS's failure to respond to plaintiff's accommodation requests (namely, his request to return to the responder position); UPS's failure to provide him with overtime opportunities commensurate with the responder positon; and UPS's failure to schedule a physical for him.[10]

Plaintiff cannot establish a prima facie case of retaliation based on defendant's purported failure to investigate his discrimination claims because he alleges no demonstrable harm stemming from that purported failure and he was able to fully pursue his claim through the grievance procedure and the EEOC. *See Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 640 (10th Cir. 2012) (no prima facie case of retaliation based on company's failure to investigate internal complaint where such failure "leaves an employee no worse off than before the complaint was filed"). Similarly, plaintiff cannot establish a prima facie case of retaliation with respect to his claim that defendant refused to return him to the responder position. Defendant's decision to remove him from that position preceded the grievance, and the failure to return him to the position was simply defendant's continued implementation of the initial disqualification

---

opportunities associated with the responder position. Because his retaliation claims fail anyway, the court need not decide whether these activities are "protected" activities for purposes of the statutes that form the bases of his claims.

[10] Although defendant has not raised this issue, none of these discrete claims of retaliation appear in plaintiff's EEOC charge or his EEOC questionnaire and, thus, summary judgment would be appropriate based on plaintiff's failure to exhaust his administrative remedies. *Jones v. UPS, Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007) (each discrete incident of alleged retaliation constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted). Defendant does assert that plaintiff has waived his claim concerning defendant's failure to schedule a physical for him by not asserting that claim in the pretrial order. This argument is supported by the record and the claim has been waived. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in the pretrial order are waived).

decision.  Stated another way, defendant's refusal to return plaintiff to the responder position cannot be deemed retaliatory when that decision was entirely consistent with defendant's initial disqualification decision made before plaintiff engaged in any protected activity.  In such circumstances, plaintiff cannot establish a causal connection between any protected activity and defendant's refusal to return him to the responder position.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (no retaliation when the disciplinary actions "simply completed the disciplinary process already set in motion" before the plaintiff had engaged in protected activity).

Plaintiff's claim that defendant denied him overtime opportunities in retaliation for his protected activity also fails.  To support his claim, plaintiff relies only on his deposition testimony, but the cited testimony fails to support an inference that he requested additional overtime opportunities.  He testified only that he spoke with Vania Spoerre, a supervisor, about the possibility of getting qualified for different jobs and that Ms. Spoerre told him she had sent out two or three emails about his inquiry but had received no response.  The record is devoid of any evidence that the jobs sought by plaintiff were open and available to him, that those jobs had overtime opportunities that would have been available to plaintiff or that the unidentified people to whom Ms. Spoerre sent the emails had any knowledge of plaintiff's protected activity.  There is simply no evidence from which a jury could infer that UPS denied plaintiff overtime opportunities in retaliation for plaintiff's protected conduct.  *See Griffith v. State of Colorado, Division of Youth Services*, 17 F.3d 1323, 1331 (10th Cir .1994) (no retaliation for refusal to reassign plaintiff to different job in the absence of evidence that vacancies existed); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("[T]o establish a causal connection, plaintiff must

show that the individual who took adverse action against him knew of the employee's protected activity."

Finally, as indicated earlier, plaintiff waived his retaliation claim concerning defendant's refusal to schedule a doctor's appointment for him by failing to include that claim in the pretrial order.  For the foregoing reasons, plaintiff has not set forth evidence sufficient to establish a prima facie case of retaliation under Title VII, the ADEA or the ADA and has not set forth sufficient evidence to establish an interference claim under the ADA.  Summary judgment, then, is warranted on plaintiff's retaliation claim and the court declines to address the parties' pretext arguments.


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 32) is granted.


**IT IS SO ORDERED.**


Dated this 1st of September, 2016, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge